Carolyn PARI–FASANO,
Plaintiff, Appellant,

v.

**ITT HARTFORD LIFE AND ACCI-
DENT INSURANCE COMPA-
NY, Defendant, Appellee.**

No. 99–2239.

United States Court of Appeals,
First Circuit.

Heard Aug. 1, 2000.
Decided Oct. 24, 2000.

Edward C. Roy, Jr., with whom Roy & Cook was on brief, for appellant.

Richard M. Peirce, with whom Roberts, Carroll, Feldstein & Peirce was on brief, for appellee.

Before TORRUELLA, Chief Judge, WALLACE,* Senior Circuit Judge, and BOUDIN, Circuit Judge.

* Of the Ninth Circuit, sitting by designation.

TORRUELLA, Chief Judge.

When appellant Carolyn Pari–Fasano's long-term disability benefits were terminated by appellee ITT Hartford Life and Accident Insurance Company ("appellee" or "ITT Hartford"), she brought suit in federal district court alleging that the termination of her benefits violated the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(1)(B) (1994). The parties submitted cross-motions for summary judgment, and a magistrate judge recommended that appellee's motion be granted and appellant's motion denied. The magistrate judge's recommendation was adopted by the district court, and judgment was entered in favor of appellee. On appeal, we affirm the grant of summary judgment.

## I. Background

Appellant was an employee of the Rhode Island Group Health Association, Inc. ("RIGHA") and was covered under a group disability insurance plan issued to RIGHA by appellee ITT Hartford. While employed at RIGHA, appellant began to suffer from degenerative cervical disc disease and bilateral carpal tunnel syndrome, which caused her a great deal of pain and sometimes prevented her from sleeping. In 1990, appellant successfully applied for disability benefits under RIGHA's insurance plan, and she received those benefits continuously until February of 1996.

In January of 1996, appellant's claim was submitted for periodic review by a physician at appellee's request. The reviewing physician determined that, although appellant's disability was well documented between 1990 and 1994, the data did not support a finding of ongoing total disability [1] as of February of 1994. Based on that preliminary determination and on a suggestion by appellant's own treating

physician that an independent medical examination ("IME") be scheduled, appellee arranged for an IME to be conducted through an independent group called First Choice Solutions. Appellee contacted appellant by telephone on January 17, 1996, and informed her of the need to undergo an IME.

However, on January 24, 1996, appellee was informed by First Choice Solutions that appellant had declined to undergo the IME. Appellee immediately sent a letter to the appellant explaining that her benefits would be terminated if she did not schedule an IME within thirty days.

A note in appellee's files dated March 4, 1996 indicates that appellant had not yet scheduled an IME as of that date. A letter dated March 5, 1996 was then sent to appellant informing her that her benefits were being terminated retroactively as of February 1, 1996. The letter set forth appellant's right to pursue an internal appeal, which she did by means of a May 1, 1996 letter in which she denied having refused to undergo an IME.

Appellant did eventually submit to an IME on July 29, 1996, which was conducted by Dr. Jerrold Rosenberg. Dr. Rosenberg concluded that there was "little clinical evidence to support a physical disability from her job at this point.... Physically I believe that the only limitations required for her to return to work would be on lifting [more than] 20 pounds." Dr. Rosenberg's report was sent to appellant's treating physician, Dr. Calvo, with a request for comments, on September 9, 1996; no response was received. A second request was sent in December of 1996. When Dr. Calvo responded to that second request on January 4, 1997, he disagreed with Dr. Rosenberg's conclusions, contending primarily

---

1. The plan included two definitions of "totally disabled." During the elimination period and the following 57 months, the term meant that the claimant was "prevented by Disability from doing all the material and substantial duties of [her] own occupation." However, after that initial period, "totally disabled" required that the claimant be "prevented by Disability from doing any occupation or work for which you are or could become qualified by: (1) training; (2) education; or (3) experience."

that they were not credible absent a physical examination. Appellee requested elaboration, but none was forthcoming.

Appellee declined to overturn its termination of appellant's benefits, and appellant filed this action on November 20, 1997, alleging that the termination of her benefits violated ERISA, 29 U.S.C. § 1132(a)(1)(B). During the ensuing litigation, the parties agreed to resubmit appellant's claim to a claims examiner for reconsideration of whether termination was appropriate. This reconsideration included a review by an orthopedic surgeon who concluded that appellant could have returned to work in February of 1996 with the restrictions that her job not require prolonged repetitive neck movements nor that she lift more than fifteen pounds. In a December 15, 1998 letter to appellant's counsel, the claims examiner concluded that the evidence did not support a finding that appellant continued to be "totally disabled" under the plan. Appellant again availed herself of appellee's internal appeal process, but her appeal was denied by letter on January 22, 1999.

The parties then resumed litigation. A magistrate judge, upon consideration of the parties' cross-motions for summary judgment, recommended to the district court that summary judgment be granted in favor of ITT Hartford. The district court adopted that recommendation, and appellant now challenges the entry of summary judgment dismissing her ERISA claim.

## II. Law and Application

### A. Standard of Review of An Insurer's Benefits Eligibility Determination

The first issue disputed by the parties is whether the lower court applied the correct standard in its review of ITT Hartford's decision to terminate appellant's disability benefits. Appellant argues that the applicable standard is one of "reasonableness," rather than the "arbitrary and ca-

pricious" standard applied by the lower court and advocated on appeal by the appellee.

As the magistrate's recommendation correctly noted, the Supreme Court held in *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115, 109 S.Ct. 948, 103 L.Ed.2d 80 (1989), that an insurer's termination decision will be reviewed under a deferential arbitrary and capricious standard where, as here, the language of the underlying plan reserves discretion to the insurer in determining eligibility for benefits. *See also Doe v. Travelers Ins. Co.*, 167 F.3d 53, 56–57 (1st Cir.1999). However, the Court in *Firestone* also suggested that, where a plan's fiduciary operates under a "conflict of interest," the reviewing court should consider that conflict in its determination of whether the fiduciary abused the discretion vested in it by the plan. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948; *Doe*, 167 F.3d at 57. The courts of appeals have since differed somewhat in their interpretation of that suggestion. *See Doe*, 167 F.3d at 57 & n. 2 (collecting cases).

This Circuit first addressed the level of review appropriate for an insurer's benefit eligibility determination under these circumstances in *Doyle v. Paul Revere Life Insurance Co.*, 144 F.3d 181 (1st Cir.1998). There we noted that an insurer does have a conflict of sorts when a finding of eligibility means that the insurer will have to pay benefits out of its own pocket, although we also noted that the market presents competing incentives to the insurer that substantially minimize the apparent conflict. *See id.* at 184. Noting the divergence of approaches taken by the other courts of appeals, we announced that our own standard under such circumstances would "adher[e] to the arbitrary and capricious principle, with special emphasis on reasonableness, but with the burden on the claimant to show that the [insurer's] decision was improperly motivated." *Id.*

In *Doe v. Travelers Insurance Co.*, 167 F.3d 53 (1st Cir.1999), we reiterated much of what was stated in *Doyle*. However, we

expressed some skepticism about the helpfulness of a formulaic approach to this standard of review question, stating:

> It seems to us that the requirement that Travelers' decision be "reasonable" is the basic touchstone in a case of this kind and that fine gradations in phrasing are as likely to complicate as to refine the standard. The essential requirement of reasonableness has substantial bite itself where, as here, we are concerned with a specific treatment decision based on medical criteria and not some broad issue of public policy.

*Id.* at 57. It is *Doe*'s emphasis on reasonableness that the appellant argues supports a less deferential review of the termination decision than the arbitrary and capricious standard applied by the lower court.

■ We conclude that the district court applied the proper standard in rejecting appellant's ERISA claim. · The Supreme Court made clear in *Firestone* that, where an insurance plan grants discretion to the insurer to determine eligibility for benefits, the insurer's decisions will generally be reviewed only for an abuse of that discretion. *See Firestone*, 489 U.S. at 115, 109 S.Ct. 948. We have since referred to such abuse of discretion review in this context as applying an arbitrary and capricious standard, *see Doyle*, 144 F.3d at 184, which may have created some confusion despite the functional equivalence of the two standards. We did not intend such reference to alter the standard of review prescribed by the Supreme Court in *Firestone*. Nor did we intend such an alteration in *Doe* when we focused on the reasonableness aspect of our review when potential conflicts of the sort involved here are present. *See Doe*, 167 F.3d at 57. Rather, we intended merely to recognize that, in order to find that an insurer had abused its discretion under the contract, we would have to conclude that the insurer's eligibility determination was unreasonable in light of the information available to it. In other words, an unreasonable determination would necessarily constitute an abuse of discretion, and a reasonable determination necessarily would not. Furthermore, in both *Doyle* and *Doe*, we took into account the potential for conflict in considering whether the insurer's decision had strayed outside the bounds of reasonableness to become an abuse of discretion. *See Doyle*, 144 F.3d at 184; *Doe*, 167 F.3d at 57.

In this case, the lower court properly tracked our guidance in *Doyle* and *Doe*. The court adhered to the arbitrary and capricious standard established by the Supreme Court in *Firestone*, and also correctly followed *Doyle* and *Doe* by (1) recognizing that the reasonableness of the insurer's decision determines whether or not it constituted an abuse of the discretion vested in the insurer by the plan and (2) further recognizing that the possible existence of a conflict of interest would necessarily affect the court's determination of what was reasonable conduct by the insurer under the circumstances. The court correctly inquired whether the circumstances indicated an improper motivation on the part of ITT Hartford and, finding no such impropriety, proceeded to simply ensure that the termination decision was not objectively unreasonable in light of the available evidence. This approach was precisely what was required by the case law, and we affirm it as an example to other courts considering ERISA claims of this type.

**B. Appellant's Arguments on the Merits**

Appellant's arguments on the merits also fail to persuade us that summary judgment was not appropriate. We agree with the lower court that, as a matter of law, the termination of appellant's disability benefits did not violate ERISA.

**1. *Appellant's Social Security Disability Litigation And Other Prior Medical Evidence***

■ Appellant's first argument is that the lower court erred in finding no ERISA

violation because she has been collecting Social Security disability benefits since 1990 based on the same disability for which she received benefits from appellee up until February of 1996. She argues that this demonstrates the unreasonableness of appellee's noneligibility determination.

■ Appellant's argument falls short of the mark, for two principal reasons. First, we have before suggested and today hold that benefits eligibility determinations by the Social Security Administration are not binding on disability insurers. *See Doyle*, 144 F.3d at 186 n. 4. The criteria for determining eligibility for Social Security disability benefits are substantively different than the criteria established by many insurance plans, including the plan in this case. *See generally* 42 U.S.C. §§ 416(i), 423(d). Consequently, although a related Social Security benefits decision might be relevant to an insurer's eligibility determination, it should not be given controlling weight except perhaps in the rare case in which the statutory criteria are identical to the criteria set forth in the insurance plan.

Second, and more important in this case, the conclusions reached in appellant's social security litigation date from 1992. Appellee does not contest that appellant was disabled at that time; to the contrary, it concedes such disability. ITT Hartford's reason for terminating appellant's benefits was a lack of evidence that she remained disabled *in February of 1996*. On that issue, the social security litigation is singularly uninformative, because, although appellant continues to receive social security disability benefits, no review of her eligibility has been undertaken since 1992.

■ The same is true of nearly all of the medical evidence submitted by appellant that tends to support her disability claim. The majority of documents that she submitted to the appellee and to the court date from well before the termination of her benefits in 1996; they range from documentation of the initial determi-

nation of her disability in 1990 to comments from physicians prepared as late as 1994. The only favorable evidence arguably within the relevant time period consisted of a statement of disability by her treating physician, Dr. Calvo, in June of 1995, and further comments from the same physician in December of that year. Included in the December comments of Dr. Calvo, however, was his own suggestion that appellant undergo an IME by an orthopedic or rehabilitation specialist chosen by appellee. This would tend to bolster the reasonableness of ITT Hartford in demanding such an examination. In light of the other evidence, Dr. Calvo's mixed comments from June and December of 1995 are simply not enough to create a genuine dispute as to the reasonableness of ITT Hartford's termination decision.

## 2. *Appellee's Failure to Conduct a Vocational Assessment of Appellant*

■ Appellant's next contention is that the appellee was unreasonable in terminating her benefits without conducting a "vocational assessment" to determine what specific jobs she was, or could become, qualified to perform. We agree with the district court that such an assessment was not necessary in this case.

■ The only case cited by the appellant to support such a requirement is *Quinn v. Blue Cross & Blue Shield*, 161 F.3d 472 (7th Cir.1998). As the magistrate's report and recommendation correctly noted, *Quinn* involved a termination of benefits in the face of conflicting medical evidence and, importantly, where the plan administrator "made no inquiry, nor did any doctor's opinion state whether there were any limitations in [the claimant's] ability to work." *Id.* at 476. The facts of this case are quite different. First, appellee asserts that the initial termination of benefits was based on the combination of (1) a lack of evidence of appellant's ongoing disability and (2) her refusal or failure to undergo an IME requested by

appellee (as it was entitled to request under the plan). This alone would likely justify the termination of benefits, because we decline to read contractual language such as that of this insurance plan to allow a beneficiary to avoid termination of benefits simply by studiously refusing to document her present condition.[2] Second, and even more damaging to appellant's argument, when she eventually did submit herself to IME's, both of the physicians who evaluated her opined explicitly as to the limitations on her ability to work and concluded that a modest weight limit on her lifting and (in the opinion of the orthopedic specialist) the avoidance of repetitive neck movements were the only conditions required to make her fit to perform any number of jobs.[3] Granted, no physician or other person proceeded to speculate or investigate and report on actual particular positions that would be appropriate for appellant to fill, but in light of the medical evidence and the conclusions of the reviewing physicians such a job-specific laundry list hardly seems necessary. Under these circumstances, we are unwilling to require the insurance company to do more than it did in this case—evaluate the claimant's medical condition and, based on that evaluation, determine if she was able to perform any job comparable in compensation to her previous position. The touchstone of our review, as we have said, is reasonableness, and we find appellee's determination in this case entirely reasonable and well supported by the record.

## III. Conclusion

For the reasons set forth above, we agree with the lower court's conclusion that the termination of appellant's long-term disability benefits, as a matter of law, did not violate ERISA. We therefore affirm the entry of summary judgment dismissing appellant's action.

**Affirmed.**

---

**2.** Contrary to the objections in appellant's brief, we do not find it "critical" that appellee failed to contact appellant's counsel to request that she undergo an IME. Appellant and ITT Hartford were not litigating in early 1996 when the request was made, and even if (as appellant insists) the insurance company was aware that appellant was represented by counsel in related matters, we do not think it unreasonable, much less improper, for appellee to have contacted appellant directly and not through her attorney. If appellant felt that legal representation was necessary at that stage, she should have alerted her counsel to the appellee's request.

**3.** Neither are we persuaded by appellant's argument that the lower court erred by considering information that came to light after the initial termination decision. First, as stated above, the termination could likely be justified solely on the combined basis of the lack of medical evidence of continuing disability and appellant's refusal or failure to rectify that lack of evidence by submitting to an IME. Second, given the fact that appellee agreed to reconsider the termination decision through internal appeals and even an entire second round of claim examination (the latter of which appellant was not entitled to under the plan), we think that the court did not err in considering all of the evidence that had been presented to the appellee before the parties finally resigned themselves to litigation.