# United States Court of Appeals
## For the First Circuit

---

No. 01-2204

LUCIEN J. DANDURAND,

Plaintiff, Appellant,

v.

UNUM LIFE INSURANCE COMPANY OF AMERICA,

Defendant, Appellee.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MAINE

[Hon. Gene Carter, U.S. District Judge]

---

Before

Torruella, Circuit Judge,
Stahl, Senior Circuit Judge,
and Lipez, Circuit Judge.

---

Graydon G. Stevens, with whom Kelly, Remmel & Zimmerman, was on brief, for appellant.
Ronald W. Schneider, with whom Patricia A. Peard and Bernstein, Shur, Sawyer & Nelson, were on brief, for appellee.

---

April 2, 2002

---

**STAHL, Senior Circuit Judge**.  Plaintiff-appellant Lucien J. Dandurand ("Dandurand") receives a monthly benefit under a group long term disability policy issued by defendant-appellee Unum Life Insurance Company of America ("Unum").  Dandurand appeals the April 3, 2001, grant of partial summary judgment in favor of Unum, in which the district court found reasonable Unum's interpretation of the policy that has had the effect of significantly reducing Dandurand's monthly benefit.  We reverse.

                                I.

Dandurand has worked as an employee of Dingley Press since August 1988 and is an eligible beneficiary of Unum's Group Long Term Disability Insurance Policy, No. 379228, (Defendant's Statement of Material Facts, No. 00-220-P-C, R. Doc. 8, App. Exh. 1 (D. Me. Jan. 22, 2001)) (hereinafter "Policy"), obtained by Dingley Press for the benefit of its employees.  The policy is governed by the Employee Retirement Income Security Act of 1974 (ERISA).  See 29 U.S.C. § 1001-1461.

In January 1994, Dandurand developed viral cardiomyopathy, an inflammation of the heart muscle.  For approximately four months thereafter, he was not able to work, but he returned to work at Dingley Press on a reduced schedule with reduced responsibilities in May 1994 and has continued to work there ever since.

A. The Policy

The Policy defines the term "disability" in two ways. A person is disabled if, "because of injury or sickness":

> 1. the insured cannot perform each of the material duties of his regular occupation; or
>
> 2. the insured, while unable to perform all of the material duties of his regular occupation on a full-time basis, is:
>> a. performing at least one of the material duties of his regular occupation or another occupation on a part-time or full-time basis;
>> b. earning currently at least 20% less per month than his indexed pre-disability earnings due to that same injury or sickness.

Policy at L-DEF-4. The Policy defines "indexed pre-disability earnings" as the "insured's basic monthly earnings in effect just prior to the date his disability began," adjusted for inflation. Id. at L-DEF-2. "Basic monthly earnings" are in turn defined as "the insured's average monthly earnings," calculated "from the W-2 form . . . received from the employer for the calendar year just prior to the date disability begins." Id. at L-PS-2. Hence, in order to be disabled within the meaning of the Policy, an insured returning to work "part-time" must earn on average, per month, no more than 80% of what he earned on average, per month, in the calendar year immediately prior to the date the disability began, adjusted for inflation. When an insured returns to work, the Policy thus defines disability not only in relation to an injury or illness, but also in relation to income.

The Policy imposes a 180-day elimination period, beginning with the date on which the insured becomes disabled,

-3-

during which no benefits are payable to the insured.  Id. at L-PS-1.  The monthly benefit an insured receives after the elimination period is based on a formula that sets the benefit in proportion to the insured's basic monthly earnings in the calendar year prior to the disability.[1]  See id. at L-PS-1, L-BEN-1-2.  The amount of the insured's pre-disability monthly earnings thus has consequences for the monthly benefit one receives upon disability, in addition to the determination of whether the insured continues to meet the income definition of disability in a given year.

The Policy also defines a "recurrent disability."  A recurrent disability is "a disability which is related to or due to the same cause(s) of a prior disability for which a monthly benefit was payable."  Id. at L-BEN-4.  A recurrent disability may be treated in one of two ways: If the insured returns to work full-time for six months or more, the recurrent disability is considered a new disability, with the insured subject to the same terms as a newly-disabled insured, including the completion of another

[1]If the insured does not return to work, the insured's monthly benefit is 70% of his/her basic monthly earnings, i.e. his/her average monthly earnings in the year preceding the disability, as long as this amount does not exceed a maximum monthly benefit established in the policy specifications (minus any other benefits the insured may be receiving for his disability such as workmen's compensation).  Policy at L-BEN-1. In a situation where the insured returns to work part-time, the benefit is calculated by taking the monthly benefit the insured would have received as above as the baseline, but by multiplying this amount by a percentage representing the actual lost income due to the disability.  This percentage is calculated by subtracting the insured's current monthly earnings from his indexed pre-disability earnings and dividing that figure by his indexed pre-disability earnings.  Policy at L-BEN-2.  In either case, the higher the basic monthly earnings immediately preceding the disability, the higher the monthly benefits that follow.

-4-

elimination period.  See id.  On the other hand, if the insured

"returns to his regular occupation on a full-time basis for less

than six months; and . . . performs all the material duties of his

occupation," the insured's benefits for the recurrent disability

are subject to the same terms as his prior disability.  See id.

B. The Policy as Applied to Dandurand's Case

        Although Unum initially determined that Dandurand was

eligible for benefits and paid such benefits between July 20, 1994

and August 19, 1999, in 1999 Unum informed Dandurand that, due to

an error in its calculation of his 1995 earnings, it had overpaid

him by almost seventy thousand dollars.[2]  The claimed error, which

was made by an Unum employee and went undetected by at least three

other Unum employees, derived from the fact that Unum had not

included bonus income received by Dandurand in 1995 when

calculating his average monthly earnings for that year.[3]  With the

---

[2]Unum also initially determined that Dandurand was no longer
disabled under the Policy, but this determination was reversed on
administrative review.

[3]Although one may normally assume that a one-time
discretionary bonus would not be included in monthly earnings, the
Policy provides for the calculation of basic monthly earnings based
on "the W-2 form (from the box which reflects wages, tips and other
compensation)." Policy at L-PS-2. Dingley Press awarded the bonus
to Dandurand in recognition of his efforts to return to work
despite his disability.  The district court found that, upon a
specific inquiry by Dingley Press's owner as to any effect the
bonus would have on Dandurand's disability benefits, an Unum
employee erroneously told him that the bonus income would not be
included in the calculation of Dandurand's income for 1995.
Dandurand v. Unum Life Ins. Co. of Am., No. 00-220-P-C, R. Doc. 29
at 6 (D. Me. July 23, 2001).  Despite this apparent
misrepresentation, Dandurand does not argue here that the bonus
should not have been included in the calculation of his 1995
earnings.

-5-

bonus income included, Dandurand's average monthly earnings for 1995 exceeded 80% of his indexed pre-disability earnings, as calculated from his 1993 earnings. Dandurand was therefore not "disabled" in 1995, according to the income definition of the Policy.

Having determined that Dandurand was not disabled in 1995, Unum proceeded to analyze whether he was entitled to benefits in 1996. Unum did so by treating 1996 as a potential new disability period. Unum thus compared Dandurand's 1996 average monthly earnings to his basic monthly earnings in 1995, the calendar year immediately preceding the date of the potential new disability, and not to his earnings in 1993. Unum determined that Dandurand was in fact disabled during that year, because his average monthly earnings for 1996 were less than 80% of his average monthly earnings for 1995. However, the fact that Unum treated 1996 as a new period of disability had several adverse consequences. First, Unum imposed a new 180-day elimination period on Dandurand at the beginning of 1996, during which he was not entitled to receive any benefits. Second, because Unum had established 1995, instead of 1993, as the benchmark year -- and because Dandurand's average monthly earnings had been lower in 1995 than in 1993 -- Unum calculated that Dandurand's monthly benefit for 1996 would be lower than it had been in 1994. Third, and just as importantly, Unum's recalculation of Dandurand's indexed pre-disability earnings based on the 1995 earnings resulted in a lower benchmark for comparing average monthly earnings in subsequent

years. Unum consequently determined that Dandurand's 1997 earnings had exceeded 80% of his indexed pre-disability earnings and that he therefore was not disabled in 1997 under the Policy and not entitled to any benefits. Comparing his 1998 average monthly earnings to his 1997 average monthly earnings, Unum then also concluded that Dandurand was not disabled in 1998 and not entitled to any benefits that year. Finally, Unum determined that, although Dandurand was once again disabled under the Policy in 1999, when his 1999 earnings were compared to his 1998 earnings, Unum could impose another 180-day elimination period at the beginning of the year and calculate Dandurand's benefits based on his earnings in 1998, which were lower than both 1995 and 1993.

Having thus concluded that it had overpaid Dandurand from 1995 to 1999,[4] Unum informed him that it would offset his future monthly benefits in their entirety until the overpayment had been recovered. Dandurand consequently brought the present action under ERISA, 29 U.S.C. §§ 1132(a)(1)(B) and (a)(3), seeking reinstatement of his monthly benefit, repayment of the benefits withheld, a ruling on the parties' conflicting interpretations of how the monthly benefit should be calculated, and a ruling that Unum should not be allowed to recover the overpayment. Dandurand did not contest that he was not disabled in 1995. Instead, he objected to Unum's determination that 1996 and 1999 constituted new disability periods, with the consequences we have discussed. He argued that

_____

[4]When Unum initially contacted Dandurand, it claimed that it had overpaid Dandurand by $70,859.28, but the parties have since stipulated that the overpayment claimed by Unum is $67,957.18.

a reasonable interpretation of the Policy would treat his disability in 1996, and thereafter, as a recurring disability that was part of a prior disability and therefore not subject to a new elimination period or a recalculation of the indexed pre-disability earnings.  Unum answered with a counter-claim seeking recovery of the overpayment, to which Dandurand raised the affirmative defense that it would be inequitable to allow recovery of any overpayment.

Upon a motion by Unum, the district court granted partial summary judgment on the question of the reasonableness of Unum's interpretation of the Policy's terms.  Dandurand v. Unum Life Ins. Co. of Am., No. 00-220-P-C, R. Doc. 17 (D. Me. April 3, 2001) (hereinafter "Order").  The court found that "Unum did not engage in an unreasonable application of the Policy by regarding Dandurand's 1995, 1997, and 1998 basic monthly earnings as his indexed pre-disability earnings" and that its decision to do so was "a straightforward application of the Policy's express language." Order at 10.[5]  This is the holding which is before us on appeal.

The district court subsequently held a bench trial on Unum's counter-claim for recovery of the overpayment.  The district court denied the counter-claim on the basis that it was inequitable, ordered Unum to cease deducting money from Dandurand's monthly payments, and directed Unum to refund the money it had

_____

[5]The district court also addressed the question of whether Unum properly included Dandurand's contributions to a 401(k) plan as income in its calculations of his 1997, 1998, and 1999 income and granted partial summary judgment in favor of Unum on its determination of the 1997 income, but not on the 1998 and 1999 income.  This issue is not before us on appeal.

-8-

deducted to date in an effort to recoup the claimed overpayment. Dandurand v. Unum Life Ins. Co. of Am., No. 00-220-P-C, R. Doc. 29 (D. Me. July 23, 2001). Unum did not appeal this ruling.

Following the entry of final judgment, Dandurand timely appealed the partial summary judgment ruling that accepted as reasonable Unum's interpretation of the Policy under which 1996 and 1999 were considered new disability periods with monthly benefits thereafter calculated based on Dandurand's earnings in 1995 and 1998, respectively.

## II.

Although the district court held that Unum may not recover any amount it may have overpaid to Dandurand from 1995 to 1999, the reasonableness issue appealed by Dandurand is not moot. Specifically, under Unum's interpretation of the Policy, Dandurand's basic monthly earnings, which set the benchmark for the calculation of his monthly benefit, are based on his lower 1998 income instead of his 1993 income, resulting in a lower monthly benefit paid to him from 1999 on. Dandurand argues that 1993, not 1998, should be the benchmark year for the calculation of his basic monthly earnings. Under the position advocated by Dandurand and according to his calculations, the difference between what he should be receiving and what Unum has calculated to be his current benefit is close to one thousand dollars per month.

We review the district court's grant of summary judgment de novo. Doyle v. Paul Revere Life Ins. Co., 144 F.3d 181, 183 (1st Cir. 1998). Summary judgment is appropriate when the record

-9-

reveals no genuine issue as to any material fact and when the moving party is entitled to summary judgment as a matter of law. See Fed. R. Civ. P. 56(c). In deciding whether summary judgment is appropriate, we are required here to give deference to Unum's interpretation of its own policy, because the Policy grants Unum "discretionary authority both to determine an employee's eligibility for benefits and to construe the terms of th[e] [P]olicy." Policy at L-PS-2; see Firestone Tire & Rubber Co. v. Bruch, 489 U.S. 101, 115 (1989) (holding that a denial of benefits will not be reviewed de novo where the language of an ERISA plan "gives the administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the terms of the plan"); Pari-Fasano v. ITT Hartford Life and Accident Ins. Co., 230 F.3d 415, 418 (1st Cir. 2000). We have previously clarified that the proper standard for reviewing the decision of an insurer that has such discretionary authority is the arbitrary and capricious standard, but that "the reasonableness of the insurer's decision determines whether or not it constituted an abuse of the discretion vested in the insurer by the plan . . . ." Id. at 419; see also Doe v. Travelers Ins. Co., 167 F.3d 53, 57-58 (1st Cir. 1999). Despite the deferential nature of this standard, Dandurand asks us here to find that Unum's decision to base the calculation of his basic monthly earnings on his income in any year other than 1993 was unreasonable. Because this determination was unreasonable, he argues, the district court improperly granted summary judgment in Unum's favor. We agree.

-10-

We begin by trying to identify the essence of the dispute between the parties. The parties agree that in 1994, Dandurand was disabled under prong two of the definition of disability in the Policy. Policy at L-DEF-4 ("the insured . . . is . . . performing at least one of the material duties of his regular occupation . . . and . . . earning currently at least 20% less per month than his indexed pre-disability earnings . . . ."). The parties further agree that in 1995, Dandurand was no longer disabled under this definition of disability because, with the bonus included, he earned more than 80% per month of what he had earned per month in 1993. In 1996, Dandurand's average monthly earnings dipped again to a level that was 20% less per month than his indexed pre-disability earnings, whether these earnings were calculated based on his 1993 income or 1995 income. The parties thus once again agree that Dandurand was disabled during 1996 -- albeit based on slightly different calculations.

The points of agreement end there. The first issue sharply contested by the parties -- and, as we shall see, the only one we must resolve here -- is whether 1996 was a new period of disability under the Policy, so that Dandurand's indexed pre-disability earnings and his monthly benefit were properly calculated based on his 1995 basic monthly earnings. Unum argues that, because Dandurand was not disabled in 1995 according to the express language of the Policy, his disability in 1996 constituted a new period of disability. Therefore, Unum claims, it was entitled in 1996 to set a new benchmark of basic monthly earnings

based on Dandurand's 1995 income. Dandurand counters that his 1996 disability was a continuation of an existing disability, as permitted under certain circumstances by the Policy's recurrent disability provisions, and Unum therefore should have continued to use 1993 as the benchmark for Dandurand's basic monthly earnings.

As we stated <u>supra</u>, a recurrent disability is defined under the Policy as "a disability which is related to or due to the same cause(s) of a prior disability for which a monthly benefit was payable." Policy at L-BEN-4. Although Dandurand's particular circumstances may not constitute the typical case contemplated by the Policy, we agree with Dandurand that he has a recurrent disability. Dandurand was entitled to monthly benefits in 1994 because cardiomyopathy caused him to drop some of his responsibilities at work with a corresponding reduction in pay of more than 20%. In 1996, he continued to suffer from cardiomyopathy and continued to work at a reduced level, with the same result that he had a pay reduction of more than 20%. Thus, his disability in 1996, i.e., his illness combined with 20% lower income, was "due to the same cause(s)," i.e., cardiomyopathy and the resultant inability to work on a full schedule, as his disability in 1994. Although it is true that Dandurand ceased to be disabled in 1995, not because he had recovered from his illness, but because he had a spike in income due to the one-time bonus, we see nothing in the definition of recurrent disability that precludes its application to such a situation -- in fact, as Unum has repeatedly stated, disability, under the Policy, is defined not just in terms of

-12-

illness or injury but also in terms of income loss.  We therefore hold that Dandurand had a recurrent disability in 1996, under the plain language of the Policy.

As Unum correctly argues and Dandurand concedes, however, our analysis cannot end there.  The language of the Policy goes on to divide those disabilities that fit under the recurrent disability umbrella into two categories:  those that will be "treated as part of the prior disability" and those that will be treated "as a new period of disability."  Id.  Specifically, the Policy states that a recurrent disability will be treated as part of a prior disability if the insured "returns to his regular occupation on a full-time basis for less than six months," but will be treated as a new period of disability if the insured "returns to his regular occupation on a full-time basis for six months or more."  Id.  Dandurand did neither -- when he returned to work after his initial four-month absence, he never resumed his full-time duties and worked continuously thereafter on a reduced schedule.  Thus, the crux of the controversy is this: Was it unreasonable for Unum to choose to classify Dandurand's recurrent disability as a new disability, instead of a continuation of a prior disability, when Dandurand's particular situation is covered by neither category under the Policy language addressing recurrent disabilities?

Unum attempts to side-step this question by taking an extremely narrow view of the recurrent disability provisions. Unum's position is that the contract provides only one path to

having a disability be treated as a continuation of a previous disability and that that path requires the insured to meet two conditions: (1) the disability must be "related to or due to the same cause(s)" as the previous disability and (2) the insured must go back to work full-time for less than six months. Since Dandurand does not meet these criteria, Unum argues, he has a new disability that must be analyzed under the general disability definition and guidelines of the Policy, and Unum was not required to extend the recurrent disability provisions to cover Dandurand's situation.

We disagree. The recurrent disability provisions do not embody the clarity and purposefulness that Unum wants to ascribe to them. Rather than the clear path Unum claims the provisions provide, they operate (1) to group a category of disability claims under the title of "recurrent disability" and (2) to sort these claims -- crudely -- into those that will be treated as new disabilities and those that will be treated as prior disabilities. Dandurand's case is clearly grouped under the recurrent disability umbrella, but the provisions do not clarify how Unum should treat the type of recurrent disability created by Dandurand's circumstances -- in fact, they are totally silent on the question.

The fact that the recurrent disability provisions are silent as to whether Dandurand's disability should be treated as a new disability or a continuation of a prior disability, does not, however, change the fact that he fits the definition of an insured with a recurrent disability. Unum cannot "bump" Dandurand out of

-14-

the recurrent disability category into the general disability category by default, simply because the language of the former does not provide Unum sufficient guidance as to how to deal with this particular fact scenario. Instead, as Dandurand correctly contends, Unum must work within the language and purpose of the recurrent disability provision to come up with a reasonable interpretation of how the provisions should treat Dandurand's particular case. Unum has not done so; rather, Unum claims that the recurrent disability definition does not cover Dandurand's situation at all. We cannot find this interpretation of the policy reasonable.

We note that, in addition to not being supported by the language and structure of the Policy, Unum's treatment of Dandurand's situation under the general disability provisions leads to a result that defies common sense. As Dandurand argues, the purpose of the basic monthly earnings calculation is to establish a benchmark by which to measure how much income an insured has lost due to the injury or illness underlying his disability. A comparison of Dandurand's 1996 and 1995 income does not provide an accurate measurement of the income loss Dandurand experienced as a result of working on a reduced schedule while suffering from viral cardiomyopathy; the only benchmark year that can provide that comparison is 1993.[6]

---

[6]Additionally, we hasten to point out that, even if we were to assume that Unum indeed worked within the recurrent disability provisions to come up with its interpretation of Dandurand's disability -- a possibility hinted at but not developed in Unum's brief -- we cannot find reasonable its conclusion that 1996 was a

-15-

Having found Unum's determination that it would re-set 1995 as the benchmark for calculation of Dandurand's benefits in 1996 unreasonable, we need go no further. It follows that Unum's calculations regarding Dandurand's disability status and benefits thereafter were unreasonable for the same reasons.

### III.

We accordingly reverse the district court's grant of summary judgment in favor of Unum and remand to the district court for further proceedings, consistent with this ruling.

**Reversed**. **Costs shall be taxed in favor of the appellant**.

---

new period of disability. It may be that Unum is suggesting that Dandurand's particular circumstances are analogous to the insured who goes back to work, full-time, for more than six months, before becoming disabled again, and thereby begins a new period of disability under the Policy. We find that this analogy does not hold up because the consequences under the provisions for an insured returning to work part-time for more than six months and an insured returning to work full-time for more than six months are materially different. If the insured returns to work full time for six months or more before becoming disabled again, his benchmark basic monthly earnings are still based on his full-time income during that period and therefore more accurately serve to measure his lost income in the period of disability that follows (although, admittedly, he is subjected to a new elimination period). On the other hand, when an insured returns to work part-time for more than six months before becoming disabled again, his already reduced income immediately preceding the new period of disability, if taken as the benchmark in subsequent calculations, does not accurately reflect his loss of income in the next period of disability. In this sense, basing the calculation of Dandurand's monthly benefit on basic monthly earnings already lowered by disability in 1995 is not only inconsistent with the purpose and structure of the Policy but also not contemplated by the recurrent disability provisions.