**Richard W. KENNARD Plaintiff**

v.

**UNUM LIFE INSURANCE COMPANY and Irving Oil Corporation Defendants**

**No. CIV. 01–217–B–K.**

United States District Court, D. Maine.

July 17, 2002.

David A. Chase, Esq., MacDonald, Chase & Szewczyk, Bangor, ME, for Plaintiff.

Patricia A. Peard, Bernstein, Shur, Sawyer, & Nelson, Portland, ME, John A. Woodcock, Jr., Weatherbee, Woodcock, Burlock & Woodcock, Bangor, ME, for Defendants.

## MEMORANDUM OF DECISION [1]

KRAVCHUK, United States Magistrate Judge.

Plaintiff Richard Kennard filed a complaint against defendants pursuant to § 502(a)(1)(B) of the Employment Retirement Income Security Act of 1974 ("ERISA") and violations of 29 U.S.C. § 1132(a)(1)(B), (a)(3), and (g), alleging that they wrongfully denied benefits to which he was entitled under a long-term disability plan established by his employer.[2] Presently before me is defendant Unum Life Insurance Company's motion for summary judgment asserting that Kennard's pre-existing conditions bar coverage of his claimed disability. (Docket No. 11.) I now **GRANT** Unum's summary judgment motion.

### Summary Judgment Standard

Summary judgment is appropriate when the record shows "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter at law." Fed.R.Civ.P. 56(c). An issue is "genuine" if, based on the record evidence, a reasonable jury could return a verdict for the nonmoving party. *Anderson v. Liberty,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" when it has the "potential to affect the outcome of the suit under applicable law." *Nereida–Gonzalez v. Tirado–Delgado,* 990 F.2d 701, 703 (1st Cir.1993). The court reviews the summary judgment record in the light most favorable to the nonmoving party. *Levy v. F.D.I.C.,* 7 F.3d 1054, 1056 (1st Cir.1993). The moving party must demonstrate an absence of evidence supporting the nonmoving party's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). Where this preliminary showing has been met, the nonmoving party must "contradict the showing by pointing to specific facts demonstrating that there is, indeed, a trialworthy issue." *Nat'l Amusements, Inc. v. Town of Dedham,* 43 F.3d 731, 735 (1st Cir.1995) (citing *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548).

### Facts

On January 31, 2000, Kennard began working with Irving Oil Corporation ("Irving") as an oil burner Service Technician. (DSMF ¶ 6; PRASMF ¶ 1.) This position requires working in residential basements and confined crawl spaces, moderate to heavy lifting and carrying, and other physical activities including climbing stairs,

---

1. Pursuant to Federal Rule of Civil Procedure 73(b), the parties have consented to allow the United States Magistrate Judge to conduct any and all proceeding in this matter.

2. Upon an unopposed Motion for Partial Summary Judgment, the claim alleging a violation of § 1132(a)(3) was dismissed. (Docket No. 10.) In the same Order, all claims against Kennard's employer, Irving Oil Corporation, were also dismissed.

bending, crouching, squatting, crawling, reaching, and kneeling. (PRASMF ¶ 2.) Prior to working for Irving, Kennard was self-employed as a heating technician and had a longstanding history of panic disorder and post traumatic stress disorder. (DSMF ¶ 7; PRASMF ¶ 3.)

Effective February 1, 2000, Kennard became a participant in the group long-term disability insurance Plan provided by Irving ("the Plan"). (DSMF ¶ 6.) On August 10, 2000, Kennard made a claim for short-term disability benefits under the Plan stating that he suffered a work-related back injury on May 17, 2000. (*Id.* ¶ 8.) Unum approved the claim for short-term disability benefits on September 14, 2000 and paid Kennard disability benefits through the maximum period of payment. (*Id.* ¶¶ 9, 10; PRASMF ¶ 17.) Kennard also submitted a waiver claim pursuant to the life insurance policy provision that allows the premium to be waived in the event of disability. (PRASMF ¶¶ 37, 39.) A medical review was conducted by Janice Wyman, R.N., on May 18, 2001, in order to answer the referral question of whether Kennard's reported level of impairment and/or restrictions and limitations are objectified with the provided data. In response to the referral question, Wyman noted the clinical findings of "back pain and sciatica"[3] confirmed by MRI. (*Id.* ¶ 39.) Wyman stated that Kennard had restrictions and limitations based on his reported pain and clinical findings and that a psychological evaluation found no cognitive impairment. (*Id.*) Before Kennard's short-term disability benefits expired, he submitted a claim for long-term disability benefits. (DSMF ¶ 11; PRSMF ¶ 11.) Unum denied the claim finding that Ken-

nard had pre-existing conditions that precluded coverage.

The present litigation involves the Plan's exclusionary clause, which bars coverage for any disability "caused by, contributed to by, or resulting from" a beneficiary's pre-existing condition. (DSMF ¶ 5.) A pre-existing condition exists if the claimant "received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the six months just prior to [his] effective date of coverage; ... and the disability begins in the first 24 months after [his] effective date of coverage unless [he had] been treatment free for 12 consecutive months after [his] effective date of coverage." (*Id.*) The Plan states Unum has discretionary authority to determine claimants' eligibility for benefits and to interpret the Plan. (*Id.* ¶¶ 1, 3.)

There are four doctors that play a part in Kennard's medical history: Drs. Rocker, Shubert, Herland, and Gallon. David Rocker, M.D., ("Rocker") saw Kennard for the first time on November 8, 1999. (*Id.* ¶ 12.) In his office notes on that date, Rocker noted that Kennard reported a longstanding history of panic disorder. (*Id.*) He further noted that Kennard lost his job because of his inability to work due to "his problems with panic" and had no insurance or Medicare coverage. (*Id.*) Rocker wrote that Kennard has a panic disorder and post traumatic stress disorder, neither of which was adequately controlled, and prescribed Valium for the anxiety and panic disorder. (*Id.*)

Almost a month later, on December 2, 1999, Kennard saw Rocker regarding back pain and his anxiety and panic disorder. (*Id.* ¶ 13; PRSMF ¶ 13.) Rocker's office notes state that Kennard complained that

---

**3.** Sciatica is defined as pain in the lower back and hip radiating down the back of the thigh into the leg, known to be usually due to herni-

ated lumbar disc compressing the L5 or S1 root. *Stedman's Medical Dictionary* 1580 (26th ed.1995).

the previous day, he was "moving in oil" and "was trying to bend at the knees." (DSMF ¶ 13; PRSMF ¶ 13; PRASMF ¶ 4.) Kennard felt a sudden, sharp pain that was worse when he took a deep breath and which radiated to his buttocks. (DSMF ¶ 13.) He reported that the pain had eased a little since the day before. (PRASMF ¶ 4.) Rocker's examination revealed that Kennard could heel-and-toe walk normally, that he had "mild tenderness to palpation over both posterior and superior ileac spines with moderate amount of muscle spasm superior to this," that he had no pain during the straight leg raises at ninety degrees in the sitting position, and had intact sensation to light touch over his lower extremities. (*Id.* ¶ 5.) Rocker diagnosed Kennard with chronic anxiety and a panic disorder and recommended Kennard continue using the Valium to treat these conditions. (DSMF ¶ 13.) In his notes, Rocker added that "the Valium should also help in regards to relaxing the muscles in his low back." (PRSMF ¶ 13.) Rocker also diagnosed Kennard with a lumbar strain with slight improvement. (PRASMF ¶ 6.) He gave Kennard stretching and strengthening exercises, suggested he engage in some sort of exercise, and suggested he take over-the-counter pain medicine, such as Tylenol. (PRASMF ¶ 6.) The parties disagree as to whether Rocker wrote that Kennard's pain was on the right side of his back. (*Id.* ¶ 4; DRSMF ¶ 4.)

Kennard saw Rocker again on January 3, 2000, and February 4, 2000, at which times he did not complain of back pain. (DSMF ¶¶ 14–15; PRSMF ¶ 15; PRASMF ¶ 7.) During a follow-up visit on March 14, 2000, Kennard complained that different areas of his upper and lower back would go numb for a few minutes. (PRASMF ¶ 9; DSMF ¶ 16.) He informed Rocker that since the age of sixteen, he had experienced "spells" lasting a few minutes where his whole body went numb. (PRASMF ¶ 9.) Rocker found that Kennard had a full range of motion in his back, had normal heel-and-toe walk, and had no decrease in sensation on his back and no tenderness to palpation. (*Id.*) Rocker assessed the condition to be intermittent paresthesias. (*Id.*) Although Rocker noted in his file that the condition was of "uncertain cause," he wrote that it may be related to Kennard's anxiety. (DSMF ¶ 16; PRSMF ¶ 16; PRASMF ¶ 9.) He did not prescribe any treatment. (PRASMF ¶ 9.) Rocker subsequently saw Kennard on April 25, 2000, at which time Kennard did not complain of back pain, but complained of other aliments including increased anxiety. (*Id.* ¶ 10.)

On May 17, 2000, Kennard was allegedly injured at work. He saw Rocker on May 26, 2000, and complained of some ailments including increased anxiety, but did not mention that he had suffered an injury at work nor complain of back pain. (DSMF ¶ 17.) Kennard stated he was able to work. (*Id.*) Rocker's office notes report that Kennard's anxiety and panic disorder was "fairly well controlled on his current medications." (PRSMF ¶ 17.) A month after this appointment, on June 27, 2000, Kennard complained to Rocker that for the past month while he was working he experienced left leg pain that radiated into his buttock. (PRASMF ¶ 11; DSMF ¶ 18.) Again, Kennard did not report any back pain and there is no indication that Kennard mentioned a work related injury. (DSMF ¶ 18; PRSMF ¶ 17; DRSMF ¶ 21.) Kennard reported that if he sits at the end of the day, his left leg, from the buttocks down to his calf, tighten up. (PRASMF ¶ 11.) During his examination, Rocker found that Kennard was "tender to palpation in the left sciatic notch, had pain at sixty degrees when doing straight leg raises from the sitting position and thirty

degrees when lying down, and had minimally diminished sensation over the lateral aspect of his left calf and over the first web space of the left foot." (*Id.*) Rocker diagnosed Kennard with "left sided sciatic pain without clinical evidence of radiculopathy."[4] (PRASMF ¶ 12.) Rocker provided samples of Naprelan and permitted Kennard to continue working provided that he was very careful about lifting objects. (*Id.*; DSMF ¶ 18.)

It was not until July 24, 2000, that Kennard first mentioned his work related injury while at Rocker's office. At the time, he was examined by Rocker's physician assistant, Evelyn Dempsey and he reported he had low back pain and left leg pain and weakness.[5] (PRASMF ¶ 14.) He reportedly had the back pain since the work related injury that occurred two months prior, but stated that the pain had increased. (*Id.*) Dempsey noted that Kennard was in mild distress, was tender to palpation in the left sciatic notch and at L5–S1, and had pain in the back at sixty degrees during the straight leg raise. (*Id.* ¶ 15.) Her notes indicate he also had diminished sensation over the lateral thigh, leg area, and great toe area and had weakness on dorsiflexion[6] of the upper foot. (*Id.*) Kennard was taken out of work until cleared by Dr. Rocker and was scheduled for an MRI.

An MRI was performed on July 28, 2000 and a subsequent report was written, stating that "[e]xamination of the lumbar spine from L1 to L3 fails to reveal any evidence of disc herniation, neutral foraminal nar-

rowing, or spinal stenosis. There is a mild, diffuse, broad posterior extension of the disc margin at L2–3." (*Id.* ¶ 19; DRSMF ¶ 19.) The documented impressions as read by Michael Pancoe, M.D., were: (1) "[m]ild bulging of the annulus fibrosis with a slight central predominance at L2–3, L3–4, and L4–5"; (2) "[m]ild disc degenerative at L3–4"; and (3) "[m]ild central disc herniation at L5–S1." (PRASMF ¶ 19.) He also noted that the protruding disc comes in contact with the thecal sac but the disc does not significantly deform it. (*Id.*) In addition, he reported that this disc comes in contact with the S1 nerve roots but does not displace or obscure them. (*Id.*) Pancoe reported that these latter points might be of clinical significance in the presence of an S1 radiculopathy. (*Id.*)

A few days after the MRI, on Aug 1, 2000, Rocker examined Kennard and reported that Kennard was very stiff and that he seemed to have difficulty standing with his left knee completely straight. (*Id.* ¶ 20.) At this point, Kennard directly informed Rocker that on May 17, 2000, he had a work related injury. (*Id.* ¶ 21.) He explained that he was carrying a boiler down a set of stairs with a co-worker when the stairs collapsed. (*Id.*) He was at the top of the stairs and wrapped his leg around the door jam to hold the boiler and prevent it from striking the co-worker. (*Id.*) After the incident, Kennard was able to continue working, but noticed pain in his lower and upper back, which progressively became worse during the day. He report-

---

4. Radiculopathy is defined as a disorder of the spinal nerve roots. *Stedman's Medical Dictionary* 1484 (26th ed.1995).

5. The day after this visit, on July 25, 2000, Kennard called Dr. Rocker's office because the workers' compensation insurer had refused to authorize an MRI that had been ordered. (DSMF ¶ 20.) While on the phone, Kennard claimed he had told Dr. Rocker in

May about his May work injury but, as the person taking the message noted, "It looks like nothing was documented here until yesterday's visit [with] Evelyn." (DSMF ¶ 20.)

6. Dorsiflexion is the turning upward of the foot or toes. *Stedman's Medical Dictionary* 517 (26th ed.1995).

ed that he began to feel leg pain on June 21, 2000. (*Id.;* DRSMF ¶ 21.) Kennard informed Rocker that he was afraid to report the incident earlier, because he feared losing his job. (*Id.;* DSMF ¶ 22.) Rocker found that Kennard could heel-toe walk, but was tender to palpation on the left sciatic notch. (PRASMF ¶ 20.) Rocker noted that no significant muscle spasm was palpable in the paraspinal muscles and that there was no tenderness of the spinous processes of the lumbar vertebra. (*Id.*) Kennard experienced pain on the left at about thirty degrees during the straight leg raises and no pain on the right. (*Id.*) Kennard had some diminished sensation over the lateral aspect of the left leg but not between the first and second toes and not over the S1 dermatome on the left. (*Id.*) Rocker did not believe that the diminished sensation fit the L5 dermatome. (*Id.*) After his examination and after reviewing the results of the MRI, Rocker diagnosed Kennard with "back pain with sciatica with no evidence clinically of an S1 radiculopathy on the left." (*Id.*) Rocker noted that although the MRI showed disc bulging at the L5–S1 level, it was not to the point of compressing the nerves. (DRSMF ¶ 20.) Rocker documented his belief that Kennard's problem stemmed back to the work injury on May 17, 2000. (PRASMF ¶ 20.) Rocker further noted that Kennard could not work due to his claimed pain and his use of narcotics for the pain. (DSMF ¶ 23.)

On August 28, 2000, Dennis L. Shubert, M.D. ("Shubert") of Maine Neurosurgery performed a neurosurgical consultation with Kennard. (DSMF ¶ 24; PRASMF ¶ 22.) Kennard reported "having difficulty with a numb, tingling sensation across his shoulders." (DRSMF ¶ 22.) Shubert noted that Kennard could walk heel-to-toe without difficulty, appeared "mildly uncomfortable" during the exam, and experienced buttock pain when performing the straight leg raises at ninety degrees. (*Id.;* DSMF ¶ 24.) Shubert read the MRI as showing "early disc desiccation changes at 3–4 and minimal bulging disc at 4–5 and 5–1." (PRASMF ¶ 22.) He concluded that there was nothing threatening on the MRI and that it was "essentially normal" for Kennard's age range. (DSMF ¶ 24.) Shubert diagnosed Kennard with acute lumbago[7] and opined, "[he] is doing worse than one would expect and I think part of this is related to his high level of anxiety and lack of understanding." (*Id.;* PRASMF ¶ 22.)

The third doctor, Jonathan Herland, D. Sc., M.D., ("Herland") at Penobscot Pain Management, became involved on September 1, 2000. (PRASMF ¶ 23.) Herland reviewed the July 28, 2000, MRI, which he read as showing "evidence of degenerative disc changes at L3–4 and L5–S1" and "what appears to be a left posterolateral disc herniation at L5–S1 which appears to be in contact with the thecal sac." (*Id.* ¶ 24.) Herland's evaluation notes show that Kennard's sensation was "diminished to light touch on the lateral aspect of his left calf and diminished to alcohol on the lateral aspect of the left calf and on the dorsum and plantar[8] surfaces of the left foot." (*Id.* ¶ 25.) He concluded that Kennard's pain was "largely an L5 radiculopathy on the left side likely secondary to his L5–S1 disc herniation" and suggested treatment consisting of an epidural steroid injection. (*Id.*)

---

7. Lumbago is defined as "pain in the mid and lower back; a descriptive term not specifying cause." *Stedman's Medical Dictionary* 998 (26th ed.1995).

8. The term "plantar" relates to the sole of the foot. *Stedman's Medical Dictionary* 1375 (26th ed.1995).

On January 25 and 30 of 2001, Kennard had a neuropsychological evaluation with neuropsychologist Robert Gallon, PhD. ("Gallon"). (DSMF ¶ 30.) Gallon concluded Kennard "has an anxiety disorder of some form but may also have a personality disorder with histrionic borderline traits." (*Id.* ¶ 30.) Gallon's report suggested that Kennard be taken off all medications and just dealt with on a crisis basis. (*Id.*) Gallon noted that some somatization may be occurring.[9] (*Id.*)

After learning in March, 2001, that Kennard saw Rocker for back pain in December of 1999, Unum had Sheila Weiss, RN, a Unum employee, perform a medical review to examine whether the Plan's pre-existing exclusion applied to Kennard's long-term disability claim. (DSMF ¶¶ 32–33; PRSMF ¶ 33; PRASMF ¶ 52.) Weiss reported that the primary condition for which Kennard filed a claim for disability benefits is "Acute lumbago = generalized nonspecific low back pain, Back pain with sciatica." She recorded the secondary condition as panic disorder and post traumatic stress disorder. (PRASMF ¶ 27.) Based on Shubert's opinion that Kennard was doing worse than one would expect and that Kennard's condition was worsened by his anxiety, and based on Shubert's diagnosis of acute lumbago, Weiss concluded that Kennard's pre-existing conditions of back pain and anxiety contributed to his current condition for which he claims disability. (DSMF ¶ 34; PRASMF ¶ 27.) Weiss also noted Kennard's medication and the July, 2000 MRI as support for her conclusion. (DRSMF ¶ 27.) Weiss's report contains the signature of Nancy Ball, M.D., which is dated March 27, 2001. (DSMF ¶ 33; PRSMF ¶ 33.) On March 28, 2001, Unum denied Kennard's claim for long-term disability bene-

fits. (DSMF ¶ 35.) Unum sent a letter to Kennard citing the Plan's pre-existing exclusion language and stating that Kennard was treated by Rocker on December 2, 1999, for a condition that "caused, contributed to or resulted in the condition" for which he claimed he was disabled. (*Id.*; PRASMF ¶ 29.)

Kennard appealed the denial on April 1, 2001, stating that Rocker would be sending a letter to clarify that although his pain on both occasions involved his back, they are "not one and the same." (PRASMF ¶ 30.) However, the claim file does not show that additional medical information was received. The only document added to the file was Kennard's April 17, 2001 letter which states, "[m]y [p]hysician and I have done our part, [sic] I would appreciate an answer to my appeal soon. Unum has had 3½ months to get any documentation needed to wrap this up. Thank [y]ou for your prompt attention." (DRSMF ¶ 34; PRASMF ¶ 34.) Unum received this letter on May 4, 2001, and the same day issued its denial. (DRSMF ¶ 34; PRASMF ¶ 32; Ex. U–KE 90–91.) The denial again cited the Plan's pre-existing condition language and explained that the medical department review found that Kennard's panic disorder, post traumatic stress syndrome, and back pain "caused, contributed to or resulted in the back condition" for which he was claiming disability. (DSMF ¶ 36; DRSMF ¶ 33; PRSAMF ¶ 33.) The denial letter referenced Rocker's November 8, 1999 and December 2, 1999 treatment notes. (DRSMF ¶ 33.)

On May 21, 2001, Kennard sought a second appeal of the denial and requested Unum to consider additional materials he intended to send to Unum. (DSMF ¶ 37; PRASMF ¶ 35.) A few weeks later, on

---

9. Somatization is defined as the expression or conversion of anxiety into physical symptoms.

*Stedman's Medical Dictionary* 1634 (26th ed.1995).

July 6, 2001, Herland reviewed the MRI again and identified what appeared to be a tear in the annulus and posterior portion of the disc which is closest to the epidural space and closest to the nerve roots. (PRASMF ¶ 44.) Herland performed a provocative discography and found a significant leak of fluid from the L2–L3 disc, which he claims produced most, if not all, of Kennard's back pain and left leg pain. (*Id.*) In a July 31, 2001 opinion letter, Herland explained that although he previously thought Kennard's left leg pain was related to the disc herniation at L5–S1, as evidenced by the MRI, he now believes that Kennard most likely injured the L2–L3 disc at the time of his May 17, 2000 work related injury. (*Id.* ¶¶ 43, 45.) Herland reviewed Rocker's office notes and reported in his opinion letter that on December 2, 1999, Kennard had mild tenderness over the posterior and superior iliac spines and a moderate amount of muscle spasm in that general area. (*Id.* ¶ 45.) Herland noted that Rocker's office notes of January 3, 2000, and February 4, 2000, do not mention back pain, and the office note of March 14, 2000, reports no tenderness to palpation of his lower back. (*Id.*) Herland concluded that as of March 14, 2000, Kennard was not suffering from any significant back pain. (*Id.*) His letter does not mention Kennard's anxiety or panic disorder. Herland opined, "[i]n short, . . . I do believe that Mr. Kennard's current back and leg pain stem from his injury from [May 17, 2000] and it seems likely that there was an injury to his L2–L3 disc which occurred on that date." (DRSMF ¶ 45; Ex. U–KE 97.)

Rocker reviewed his records dating back to December 2, 1999, and wrote an opinion letter dated June 25, 2001. The letter states that Kennard's "current condition is not the same problem for which he received medical treatment, consultation, care or services, including diagnostic measures or took prescribed medications for prior to May of 2000." (PRASMF ¶ 46.) Rocker's letter does not discuss his November 8, 1999 treatment of Kennard for anxiety and does not discuss any contributing nature of Kennard's anxiety or panic disorder. (DRSMF ¶ 46; DSMF ¶ 40.) In forming their opinions, Rocker and Herland relied on Kennard's claim that he had been injured at work on May 17, 2000. (DSMF ¶ 40.)

On September 5, 2001, Kennard provided Unum with the opinion letters from Herland and Rocker. (PRASMF ¶ 41.) Unum had Thomas Reeder, M.D., ("Reeder") a Unum employee, conduct a "walk-in" medical review on October 1, 2001.[10] (DSMF ¶ 39; PRASMF ¶ 52.) In its referral form to Reeder, Unum listed the diagnosis as back pain and depression, and asked Reeder whether the new information alters Unum's previous decision that Kennard received treatment, care, and consultation and took prescribed medication during his pre-existing time period for a condition or conditions that caused, contributed and resulted in the conditions for which he is claiming benefits. (PRASMF ¶ 47.) That same day, Reeder provided the following hand written response on the referral form:

> In a word—no. Clmt's 12/2/99 evaluation for back pain radiating to the buttocks after lifting an oil burner. Exam was specifically for back pain + root irritation ([straight leg raises] were done). Dr. Herland did not see clmt until 8/31/00. Do not see how he can provide any relevant information concerning a back problem occurring in Dec'99 or opine that 7/00 MRI findings

---

10. The record indicates that a "file review" and a "walk in review" are different from each other, but does not elaborate on the distinction.

are from lifting an oil burner in 5/00 as opposed to 12/99 c contemporaneous evaluation + treatment. Clmt's impairing condition was most likely a result of back pain evaluated, diagnosed, + treated during pre-[existing] period in 12/99. (PRASMF ¶ 49.)

Reeder did not mention which medical records or claim materials he reviewed. (*Id.* ¶ 48.)

On October 1, 2001, Unum issued its final decision in which it upheld its previous denial, stating that the medical department reviewed the opinion letters from Herland and Rocker but the information does not alter its previous decision to deny benefits. (*Id.* ¶ 47; DSMF ¶ 41.) Unum incorporated by reference the May 4, 2001 denial letter in explaining its rationale. (*Id.*) Unum's denial letter states "[t]he December 2, 1999 treatment note clearly states Mr. Kennard injured his back after moving an object at work the previous day. According to our medical department, it is clear Mr. Kennard received treatment, consultation, care, services and took prescription medications during his pre-existing time period for conditions that caused, contributed and resulted in the conditions for which he is claiming benefits." (DRSMF ¶ 51; PRASMF ¶ 51.)

### Discussion

■ Unum moves for summary judgment on the ground that Kennard has two separate preexisting conditions that caused or contributed to his claimed disability, therefore its benefits denial was reasonable and supported by sufficient evidence in the record. Kennard asserts that Unum's decision was unreasonable in light of new evidence contained in two physician opinion letters. Before delving into whether Unum's denial was reasonable, two preliminary matters must be determined. First, the parties accurately conclude that the Court is to review Unum's

decision under the arbitrary and capricious standard because Unum has discretionary authority under the Plan to make benefit determinations and interpret the Plan. (PRMSJ at 3.) *See also Pari–Fasano v. ITT Hartford Life and Accident Ins. Co.,* 230 F.3d 415, 418 (1st Cir.2000). Kennard, relying on the First Circuit's decision in *Doyle v. Paul Revere Life Ins. Co.,* 144 F.3d 181 (1st Cir.1998), urges the court to place a special emphasis on reasonableness because Unum has a conflict of interest. However, this elevated arbitrary and capricious standard requires the claimant to meet the burden of showing that the claim denial was improperly motivated. *Doyle,* 144 F.3d at 184. Merely asserting that a conflict of interest exists where the insurer would have to pay out benefits is not enough to meet this burden because the market presents competing incentives to the insurer that minimizes this apparent conflict. *See Pari–Fasano,* 230 F.3d at 418–419 (discussing *Doyle* ). As Kennard has not shown an improper motive on the part of Unum, the arbitrary and capricious standard, without a heightened scrutiny or special emphasis, will be applied to the review of Unum's denial.

■ The second matter involves whether the judicial review of Unum's decision should be limited to the long-term disability claim file before Unum at the time the benefit decision was made. The parties agree the record to be reviewed by the Court contains information dated October 1, 2001, the date of Unum's final decision, or earlier. *See Chandler v. Raytheon Employees Disability Trust,* 53 F. Supp.2d 84, 85 n. 1 (D.Mass.1999), *aff'd,* 229 F.3d 1133 (1st Cir.2000) (stating that the record is limited to evidence before the decision-maker when the claim decision was made). However, Kennard argues that the record contains documents included in his premium waiver claim file for life insurance as

well as the documents in his long-term disability claim file. As Kennard fails to state specifically which of the 225 pages in the waiver claim file Unum should have considered, the waiver file will not be viewed as a supplement to the record. Thus, the record subject to review consists of the documents in the long-term disability file.

■■ Having addressed the two preliminary matters raised by the parties, the focus now turns to the issue in this case: whether Unum's decision to deny Kennard's long-term disability claim due to pre-existing conditions was objectively unreasonable, i.e. an abuse of discretion, in light of the evidence before it. Where the administrator has discretion to determine benefits, the administrator's decision is normally upheld unless it is "arbitrary, capricious, or an abuse of discretion." *Doyle,* 144 F.3d at 183 (citations omitted). Under this standard of review, Unum's claims decision should not be disturbed if Unum acted (1) within its authority, (2) if Unum's decision was reasoned, and (3) if Unum's decision was "supported by substantial evidence in the record." *See id.* at 184 (citing *Associated Fisheries of Me., Inc. v. Daley,* 127 F.3d 104, 109 (1st Cir. 1997)). "Substantial evidence" is found where there is "reasonably sufficient" evidence to support the decision-maker's conclusion. *Id.*

Unum denied Kennard's claim on the ground that coverage is precluded by the pre-existing clause contained in the Plan. The Plan excludes from coverage any disability "caused by, contributed to by, or resulting from" a beneficiary's pre-existing condition. (DSMF ¶ 5.) A pre-existing condition exists, in relevant part, if the claimant received medical treatment, consultation, care or services including diagnostic measures, or took prescribed drugs or medicines in the six months just prior to

[his] effective date of coverage. (DSMF ¶ 5.) Unum concluded that Kennard has two conditions that independently constitute grounds for denial, a 1999 back problem and an anxiety and panic disorder, because they caused or contributed to the back pain for which he seeks disability benefits. Each ground for denial will be independently reviewed.

*1. Whether There is Substantial Evidence to Support the Conclusion that Kennard's Back Pain was Caused by, Contributed to by, or Resulted from His Anxiety and Panic Disorder*

■ Unum asserts that the long-term disability claim file contains ample evidence to support the conclusion that Kennard's pre-existing panic and anxiety disorder contributes to the back condition for which he claims to be disabled. (DMSJ at 7.) Unum first directs attention to Kennard's March 14, 2000 complaint to Rocker that his back was going numb from time to time. (DSMF ¶ 16.) Rocker attributed this intermittent paresthesias to Kennard's anxiety, which had reportedly become worse during the previous month. (DSMF ¶¶ 15–16.) Closer inspection of Rocker's office notes however, shows that Kennard complained that different areas of his *upper and lower* back would go numb for a few minutes and that since he was sixteen, he has experienced "spells" lasting a few minutes where his whole body would go numb. (PRASMF ¶ 9.) The fact that Rocker attributed the intermittent paresthesias to anxiety suggests at most that Kennard's anxiety may cause physical effects.

Second, Unum focuses on Shubert's August 28, 2000 opinion that Kennard's MRI was essentially normal for his age range and Shubert's statement that Kennard was "doing worse than one would expect" and

"part of this is related to [Kennard's] high level of anxiety and lack of understanding." (DSMF ¶¶ 24–25.) Third, Unum points to Gallon's January 2001 report in which Gallon concluded that Kennard has "an anxiety disorder of some form but may also have a personality disorder with histrionic borderline traits." (DSMF ¶¶ 27, 30.) The "essential features of Histrionic Personality Disorder is pervasive and excessive emotionality and attention-seeking behavior." *Diagnostic and Statistical Manual of Mental Disorders* 655 (4th ed.1994). Gallon suggested that Kennard be taken off all medications and dealt with on a crisis basis. (DSMF ¶ 30.) Similar to Rocker's finding, Gallon also seemed to feel that there may be some somatization occurring.[11] (DSMF ¶ 30.)

Unum asserts that in light of these facts generated through the medical records of Kennard's own medical professionals, it reasonably concluded that Kennard's pre-existing anxiety and panic disorder contributed to his claimed disabling back pain. (DSMF ¶ 9.) Kennard concedes that these factors may have been adequate to support Unum's initial denial and first appeal denial, but argues that the subsequent opinion letters from Herland and Rocker provide evidence warranting reversal of the denial. Rocker's June 25, 2001 letter states that Kennard's "current condition is not the same problem for which he received medical treatment, consultation, care or services, including diagnostic measures or took prescribed medications for prior to May of 2000." (PRASMF ¶ 46.) Herland's July 31, 2001 opinion letter reports that the discography he performed on July 6, 2001, shows a significant leak of fluid from Kennard's L2–L3 disc into the epidural space, which Herland finds explains Kennard's lower back pain. (Ex. U–KE 97 at 2.) According to Herland, Kennard's condition occurred as a result of the May 17, 2000 work injury. (DRSMF ¶ 45.) Kennard asserts that Herland's "objective" findings completely discredit Gallon's statement that Kennard suffered from somatization. (PRMSJ at 15.)

Unum does not view these letters as dispositive. It claims the letters merely state that Kennard's back pain of December 2, 1999, is not the same as his May 17, 2000 back pain, but they fail to address the contributory nature of Kennard's anxiety or panic disorder. (DMSJ at 10.) Further, Unum asserts that Herland's discography does not render Unum's decision unreasonable. (DRMSJ at 4.) Unum is correct in that Rocker's letter only states that the back pain Kennard suffers from now is not the same back pain he complained of and was treated for in the past. He does not mention whether Kennard's anxiety contributes to this back pain. Further, Herland's letter does not state that the level of pain Kennard complains of is commensurate with the pain that would be expected from such leakage. "Under the Plan, a pre-existing condition need only contribute to the disability; it need not be the sole cause of the disability." *Moore v. Reliance Standard Life Ins. Co.*, 2000 WL 1537990, at *4, *6 (D.La. Oct. 17, 2000) (analyzing the administrator's benefits decision under a pre-existing condition clause similar to the present clause). Neither opinion letter addresses whether Kennard's anxiety contributes to Kennard's back pain, thus, neither letter directly contradicts Unum's conclusion.

 Moreover, the presence of conflicting evidence in the record does not mean that Unum's conclusion is unreason-

---

11. The parties define "somatization" as the "the conversion of anxiety into physical symptoms." (PRMSJ at 9; DSMF ¶ 30 n. 6) (citing *Stedman's Medical Dictionary* 1301 (24th ed.1982).)

able. *See Sullivan v. Raytheon Co.*, 262 F.3d 41, 52 n. 8 (1st Cir.2001) (stating that an administrator's decision is not arbitrary and capricious merely because there is contradictory evidence (citing *Doyle*, 144 F.3d at 184)). It is Unum's responsibility, not the court's, to weigh the conflicting evidence. *See Vlass v. Raytheon Employees Disability Tr.*, 244 F.3d 27, 32 (1st Cir.2001); *Terry v. Bayer Corp.*, 145 F.3d 28, 40 (1st Cir.1998) (stating that the court may not substitute its judgment for that of the administrator). Based on Rocker's treatment of Kennard for anxiety and the associated physical symptoms (i.e. parathesias) and the opinions of Shubert and Gallon that Kennard's back pain is exacerbated by anxiety, there is sufficient evidence for Unum to conclude that Kennard's claimed back pain is "caused by, contributed to by, or resulting from" his anxiety which is a pre-existing condition.[12]

## 2. Whether There is Substantial Evidence to Support the Conclusion that Kennard's Back Pain was Caused by, Contributed to by, or Resulted from His December 1999 Back Problem

Unum also concluded that Kennard's claimed back pain was caused by or contributed to by his December 1999 back problem. (DMSJ at 11.) Unum states that it reasonably gave little weight to the opinion letters because Rocker and Herland rely on the "questionable" claim that Kennard was injured at work in May of 2000. Unum asserts that the more likely truth is that Kennard injured his back in December 1999 and the pain became progressively worse until it led Rocker to conclude that Kennard could not work. According to Unum, the file contains evidence indicating that Kennard did not suffer an injury at work. (DMSJ at 11.) First, Kennard failed to complain of back pain or mention a work injury when he first saw Rocker after the alleged May 17, 2000 injury. Second, at a subsequent appointment, Kennard insisted he told Rocker of the work injury, then recanted saying he did not report the injury because he feared losing his job. Third, Unum's two medical reviews concluded that Kennard's condition is related to his December 1999 injury.

According to Kennard, Unum relies on an inaccuracy in reaching its conclusion. The record shows that Reeder, the Unum medical reviewer Unum relied upon in reaching its final decision, concluded that Kennard's December 1999 injury occurred when Kennard was moving an oil burner at work, the same act he was performing in May 2000 when he was injured. (PRASMF ¶ 49; Ex. U–KE 88.) However, the physician's December 1999 notes actually state that Kennard's back pain occurred when Kennard was "moving in oil" and "bending at the knees." (PRASMF ¶ 4.) Thus, the notes do not state that he was moving or lifting anything at the time. Additionally, the notes state that Kennard's pain had eased since the day before. (PRASMF ¶ 4.)

Further, Kennard asserts that Rocker's and Herland's opinion letters show that Unum's conclusion is incorrect. Rocker, the physician that examined Kennard the most during the relevant time period, treated Kennard while he suffered from the 1999 back pain and after the alleged May, 2000 work injury. Rocker's June 25, 2001 opinion letter states that Kennard's

---

**12.** It is not disputed that Kennard's anxiety qualifies as a pre-existing condition as Kennard "received medical treatment, consultation, care or services... or took prescription drugs" for his anxiety during the six months prior to his effective date of coverage, February 1, 2000. (PRASMF ¶ 3; PRMSJ at 18.)

condition is *not* the same problem for which Kennard received treatment, consultation, care · or services, or took medications for prior to May 2000. (Ex. U–KE 98.) Herland points out in his opinion letter that although Kennard complained of back pain to Rocker in December of 1999, he did not complain of back pain again from that date through his March 14, 2000 appointment. Herland concludes that Kennard's back and leg pain was caused by· his May, 2000 injury when his L2–L3 disc was injured.

 Because I have already concluded that Unum's decision regarding the contributory aspect of Kennard's anxiety condition was not unreasonable, I do not necessarily need to review the reasonableness of its decision regarding the 1999 back injury. However, because that decision was not supported by sufficient evidence, I believe I should discuss it briefly. Rocker's notes do not show that Kennard complained of the same symptoms with his 1999 back pain that he complained of with his 2000 back pain. Further, the tests Rocker performed on Kennard resulted in different outcomes. On December 2, 1999, Kennard described a sudden, sharp pain that was worse when he took a deep breath and that radiated to his buttocks. (DSMF ¶ 13.) Rocker reported that Kennard had "mild tenderness to palpation over both *posterior and superior ileac spines*, a moderate amount of muscle spasm superior to this." (PRASMF ¶ 5)(emphasis added.) He could· perform the straight leg raises to ninety degrees *without pain* in the sitting position and had *intact sensation* to light touch over his lower extremities. (PRASMF ¶ 5.) Rocker diagnosed Kennard with a *lumbar strain*

(also known as general back pain) with slight improvement. (PRASMF ¶ 6.) Rocker prescribed over the counter pain medicine and exercises.

In contrast, Rocker's office notes for the June 2000 examination state that Kennard was tender to palpation in the *left sciatic notch*, had pain at sixty degrees during the straight leg raises from the sitting position and thirty degrees when lying down, and he had *minimally diminished sensation* over the lateral aspect of his left calf and over the first web space of the left foot. (PRASMF ¶ 11.) Kennard complained of back pain and left leg pain that radiated into his buttock. (*Id.;* DSMF ¶ 18.) Rocker diagnosed him with *"left sided sciatic pain* without clinical evidence of radiculopathy." (PRASMF ¶ 12) (emphasis added.) He gave Kennard samples of Naprelan and instructed him to be very careful about what he lifts at work. (*Id.;* DSMF ¶ 18.) During Kennard's next appointment with Rocker on August 1, 2000, Kennard informed Rocker of his May work injury. Rocker examined Kennard and found symptoms similar to those found during the June appointment: tenderness to palpitation on the left sciatic notch, pain during the straight leg raises, and diminished sensation over a portion of the left leg. Following his examination and review of the MRI, Rocker attributed Kennard's back pain to his May, 2000 work injury and diagnosed Kennard as having back pain with sciatica. The foregoing indicates there is evidence in the file showing that Kennard's December 1999 symptoms, examination results, and diagnosis are not the same as those following the alleged May injury.[13] *Compare Pulvers v. First UNUM Life Ins.,* 210 F.3d 89, 94 (2nd

---

[13]· Kennard asserts that Rocker's December · 2, 1999· office notes state that Kennard complained of pain on the lower *right* side of his back. The note is illegible on this point,

·however if the December 1999 pain was on the right side and not in the middle or the left side, this adds another distinction between the two complaints of back pain.

Cir.2000) (stating that Unum's conclusion that the claimant's two conditions were medically the same was supported by "the similarities, in both symptoms and treatment, between the April and July 1996 incidents... and ....[the claimant's] submissions when he made his initial claim for benefits" and holding that in light of these factors the court cannot say that Unum's determination was "without reason, unsupported by substantial evidence or erroneous as a matter of law").

I fail to find evidence in the record that supports Unum's conclusion that Kennard's December 1999 back problem contributed to or caused Kennard's claimed May, 2000 back pain. The only evidence in the file connecting the two back problems is the medical opinion from Unum's medical reviewer, Reeder. In reaching its final decision Unum relies upon Reeder's medical review and "infers" that Kennard was lifting and moving an oil burner when his 1999 back pain occurred, the same activity Kennard claims he was performing when the May, 2000 back injury occurred. (DRMSJ at 6; Ex. U–KE 88.) Due to the similarity in events, Reeder and Unum reasoned that Kennard's May, 2000 back problem likely stemmed from the December 1999 incident and therefore they give little weight to Rocker's and Herland's opinion letter. (Ex. U–KE 88; PRASMF ¶ 49.) However, as previously mentioned, Rocker's December 1999 office notes do not state that Kennard was moving or lifting anything; the notes merely report that Kennard was "moving in oil" and "bending at the knees" when the back pain occurred. Thus Reeder based his opinion upon evidence that did not exist. While Unum can give conflicting opinions different weight, it cannot reinvent the evidence before it.

In sum, the file does not contain "sufficient evidence" to support Unum's conclu-sion that Kennard's December 2, 1999 back problem caused or contributed to his claimed disabling back problem, therefore Unum's denial based on a pre-existing back problem is not reasonable. *See Motor Vehicle Manufacturers v. State Farm*, 463 U.S. 29, 43, 103 S.Ct. 2856, 77 L.Ed.2d 443 (1983) (stating that a decision may be deemed arbitrary and capricious if the decision-maker's offered explanation is contrary to the evidence); *Sandoval v. Aetna Life and Cas. Ins.*, 967 F.2d 377, 382 (10th Cir.1992) (stating that substantial evidence requires more than a scintilla of evidence but less than a preponderance of the evidence to support a conclusion). This finding however does little to help Kennard in light of the above finding that the evidence in the file supports Unum's conclusion that Kennard's pre-existing anxiety disorder contributes to Kennard's current back condition. Therefore, the exclusion still applies and precludes Kennard's long-term disability claim even if the current back condition is different from the December 1999 lumbar strain.

### 3. Whether Unum Employed Improper Procedures

Kennard argues that Unum departed from "fair process" and this should "bear weight on the reasonableness" of Unum's conduct. (PRMSJ at 5.) These allegations are related to the procedures Unum employed. First, Kennard claims that Unum's failure to consider the documents in the waiver file is a diversion from regular procedures. However, Kennard does not introduce into the record what the regular procedures are and further does not show what relevant documents within the file should have been, but were not, considered. Second, Kennard asserts that Unum should not have decided his first appeal until it received the documents Kennard stated would be forthcoming. According to the record, Unum did not receive any additional documents after

Kennard's April 1, 2001 appeal except for Kennard's April 17, 2001 letter. In that letter, Kennard wrote that he and his physician have done their part, that Unum has had three and one-half months to get any documentation need to "wrap this up," and that he would appreciate an answer to his appeal soon. The very day Unum received Kennard's request, it issued its decision to deny the appeal. Kennard's letter requesting a second appeal states that Kennard incorrectly believed Rocker provided Unum with his medical opinion prior to Unum's denial of the first appeal. I fail to see how this constitutes an "unfair process." In any event, Unum ultimately opened the deadline and allowed the review of Kennard's belated opinion letters from Rocker and Herland.

■ Third, Kennard finds unreasonableness in the fact that one of Unum's medical reviewers, Wyman, reached one conclusion in determining Kennard's premium waiver and the medical reviewer for Kennard's long-term disability claim reached a different conclusion. However, Kennard fails to consider that Wyman's conclusion vis-à-vis the premium waiver is premised on considerations that are different from the considerations involved in granting or denying a long-term disability claim. Wyman's review was conducted for the purpose of determining whether Kennard was actually disabled, not whether he had a pre-existing condition. (*See* PRASMF ¶ 39.) Thus, the different conclusions do not demonstrate that Unum's denial of Kennard's second appeal is unreasonable.

### Conclusion

Based on the forgoing, summary judgment is **GRANTED** in favor of Unum.